Received County of Berks Prothonotary's Office on 11/02/2022 10:38 AM Prothonotary Docket No. 22-11757

**CORNERSTONE LAW FIRM, LLC**
Joel A. Ready, Esquire
Attorney I.D. #321966
8500 Allentown Pike, Suite 3
Blandon, PA 19510
(610) 926-7875
*Counsel for Plaintiff*

| | |
|---|---|
| JASON SCOTT JORDAN,<br><br>             Plaintiff,<br><br>         v.<br><br><br>BENE MARKET, LLC, et al.,<br>             Defendants. | COURT OF COMMON PLEAS OF BERKS COUNTY, PENNSYLVANIA<br><br>CIVIL-ACTION<br><br>Docket No.: 22-11757<br><br>JURY TRIAL DEMANDED |

## PLAINTIFF'S ANSWER TO DEFENDANTS' PRELIMINARY OBJECTIONS

NOW COMES, Plaintiff Jason Scott Jordan, by and through counsel, who answers the Preliminary Objections to the Complaint and state the following:

Paragraphs 1 through 61: Denied as legal conclusions and where the Notice to Plead was improvidently made as the preliminary objections are in the nature of demurrer and factual insufficiency under Pa.R.C.P. 1028(a)(3) and (a)(4). As a matter of law, "preliminary objections raising an issue under subdivision (a)(2), (3), or (4) may be determined from facts of record so that further evidence is not required." Official Note to Pa.R.C.P. 1028(c). Defendants' fact defenses, relating to an appeal in the prior action before Superior Court at Docket No. 642 MDA 2022, are further inappropriate as a matter of law and may not be considered at the pleading stage: "Fact-based defenses, even those which might ultimately inure to the defendant's benefit, are thus irrelevant on demurrer." Werner v. Plater-Zyberk, 799 A.2d 776, 783 (Pa.Super. 2002).

WHEREFORE, based on the foregoing, Plaintiff respectfully requests that this Honorable Court overrule the preliminary objections and order Defendants to answer the Complaint.

Respectfully submitted,

1

Received County of Berks Prothonotary's Office on 11/02/2022 10:38 AM Prothonotary Docket No. 22-11757

**CORNERSTONE LAW FIRM, LLC**

Dated: November 2, 2022      By:      /s/ Joel A. Ready
                                       Joel A. Ready, Esquire
                                       I.D. # 321966
                                       8500 Allentown Pike, Suite 3
                                       Blandon, PA 19510
                                       (610) 926-7875
                                       *Counsel for Plaintiff*

2

Received County of Berks Prothonotary's Office on 11/02/2022 10:38 AM Prothonotary Docket No. 22-11757

**CORNERSTONE LAW FIRM, LLC**
Joel A. Ready, Esquire
Attorney I.D. #321966
8500 Allentown Pike, Suite 3
Blandon, PA 19510
(610) 926-7875
*Counsel for Plaintiff*

| | |
|---|---|
| JASON SCOTT JORDAN,<br><br>Plaintiff,<br><br>v.<br><br>BENE MARKET, LLC, et al.,<br>Defendants. | COURT OF COMMON PLEAS OF BERKS COUNTY, PENNSYLVANIA<br><br>CIVIL-ACTION<br><br>Docket No.: 22-11757<br><br>JURY TRIAL DEMANDED |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S PRELIMINARY OBJECTIONS

Plaintiff, Jason Scott Jordan, by and through counsel hereby submits this brief in opposition

of Preliminary Objections to the Complaint and requests that the same be overruled for the reasons

set forth below.

## STATEMENT OF THE QUESTIONS INVOLVED

A. **WHETHER THE COURT SHOULD OVERRULE DEFENDANTS' DEMURRER TO COUNT I OF PLAINTIFF'S COMPLAINT FOR UNJUST ENRICHMENT?**

**SUGGESTED ANSWER: YES**

B. **WHETHER THE COURT SHOULD OVERRULE DEFENDANTS' DEMURRER TO COUNT II OF PLAINTIFF'S COMPLAINT FOR VEIL-PIERCING?**

**SUGGESTED ANSWER: YES**

C. **WHETHER THE COURT SHOULD OVERRULE DEFENDANTS' DEMURRER TO PLAINTIFF'S REQUEST FOR THE APPOINTMENT OF A TEMPORARY RECEIVER?**

**SUGGESTED ANSWER: YES**

1

**Received County of Berks Prothonotary's Office on 11/02/2022 10:38 AM Prothonotary Docket No. 22-11757**

**D.    WHETHER THE COURT SHOULD OVERRULE DEFENDANT STEPHANIE MILLER'S CLAIM OF FACTUAL INSUFFICIENCY?**

**SUGGESTED ANSWER: YES**

### STATEMENT OF THE CASE

The facts are discussed per seriatim in the Argument. Where the Complaint incorporates by reference a Decision and Verdict by Judge Rowley in a separate matter, attached as Exhibit A, the Court may judicially notice the same and it may be considered by the Court as undisputedly authentic documents on which the Plaintiff's claims are based. Pensions Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

### STANDARD OF REVIEW

"Under the rules and the case law, it is clear that matters not raised in preliminary objections may not be considered by the court *sua sponte*." MacGregor v. Mediq, Inc., 576 A.2d 1123, 1128 (Pa.Super. 1990) (citations omitted). Where reasons for dismissal of allegations contained within a complaint are clearly established, courts may strike a complaint or strike allegations by way of preliminary objection. See Witherspoon v. City of Philadelphia, 768 A.2d 1079 (Pa. 2001); Bower v. Bower, 531 Pa. 54, 611 A.2d 181 (Pa. 1992); Interstate Traveler Services, Inc. v. Com., Dept of Environmental Resources, 406 A.2d 1020 (Pa. 1979).

In respect of factually insufficient specificity, "The pertinent question under Rule 1028(a)(3) is whether the complaint is sufficiently clear to enable the defendant to prepare his defense, or whether the plaintiff's complaint informs the defendant with accuracy and completeness of the specific basis on which recovery is sought so that he may know without question upon what grounds to make his defense." Rambo v. Greene, 906 A.2d 1232, 1236 (Pa.Super. 2006) (quotations omitted). Factual specificity has "two conditions that must always be met: the pleadings must adequately explain the nature of the claim to the opposing party so as to

Received County of Berks Prothonotary's Office on 11/02/2022 10:38 AM Prothonotary Docket No. 22-11757

permit him to prepare a defense and they must be sufficient to convince the court that the averments are not merely subterfuge." Commonwealth v. Golden Gate Nat'l Senior Care, LLC, 194 A.3d 1010, 1030 (Pa. 2018) (citations and internal quotations deleted). "However, it is not enough to focus upon one portion of the complaint.  Rather, in determining whether a particular paragraph in a complaint has been stated with the necessary specificity, *such paragraph must be read in context with all other allegations in that complaint*. Only then can the court determine whether the defendant has been put upon adequate notice of the claim against which he must defend." Yacoub v. Lehigh Valley Med. Assocs., 805 A.2d 579, 589 (Pa.Super. 2002) (emphasis added).

Under Pa. R.C.P. 1028(a)(4), "The question presented by a demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible." Werner v. Plater-Zyberk, 799 A.2d 776, 783 (Pa.Super. 2002).  "Any doubt should be resolved by a refusal to sustain the objections." Id.  "[A]ll material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for the purposes of review."  Id. at 782.  "Fact-based defenses, even those which might ultimately inure to the defendant's benefit, are thus irrelevant on demurrer."  Id. at 783.

## ARGUMENT

### I.      Plaintiff Has Stated a Cause of Action for Unjust Enrichment as to Defendant Miller.

Defendant Stephanie Miller demurs to Count I of the Complaint regarding unjust enrichment.  Miller correctly recites the law but misapply it to the allegations of the Complaint. Miller asserts that Defendant did not confer any benefit as to her. That is patently incorrect.

The Complaint alleges that Alan Christopher Redmond fraudulently misappropriated the assets of National Brokers of America, Inc. (NBOA), including its book of business and all employees, into Bene Market, LLC and that Judge Rowley so found in a bench trial against Redmond. [Compl. ¶¶ 5-35]. Defendant Miller, in particular, was the former Chief Financial

3

Received County of Berks Prothonotary's Office on 11/02/2022 10:38 AM Prothonotary Docket No. 22-11757

Officer of NBOA and followed Redmond over to Bene Market, LLC in that employment context. [Compl. ¶ 27]. Miller's position as CFO supports a reasonable inference that she had knowledge of the ownership structure of NBOA, including the fact that Plaintiff was 50% owner. The Complaint also alleges that Miller agreed to be a figurehead equity owner of 5% of Bene Market, LLC in collusion with Redmond in order to shield assets from Plaintiff. [Id. ¶ 35]. In depositions from the prior action against Redmond, he "feigned ignorance over the amount for which the assets sold and that he needed to ask Stephanie Miller." [Id. ¶ 28].

By colluding with Redmond as the CFO of NBOA and by receiving income through employment as CFO for Bene Market, LLC, the Court can infer that each element is satisfied as to a claim for unjust enrichment: (1) Plaintiff conferred benefits on Stephanie Miller, i.e., her employment in Bene Market, LLC and figurehead equity ownership of 5%, funded by assets misappropriated from NBOA in which Miller assisted Redmond in the misappropriation; (2) by colluding with Redmond, a reasonable inference is made that Miller appreciated the benefits; and (3) it is inequitable for Miller to accept and retain these benefits without the payment of value. Mitchell v. Moore, 729 A.2d 1200, 1203-04 (Pa.Super. 1999). No relief is due.

## II.        Plaintiff Has Stated a Cause of Action for Reverse-Piercing.

Defendants read the Complaint myopically and assert that it contains "no such allegations" of veil-piercing and Plaintiff limited his theory to "alter ego." Their assertions are patently frivolous. The Complaint alleges that Jordan, in a bench trial before Judge Rowley, already proved and obtained a judgment against Redmond that he fraudulently misappropriated $3,698.627.10 from NBOA and he transferred the assets of NBOA for no consideration to Bene Market, LLC, including its book of business. Judge Rowley then found that Redmond, through Bene Market, LLC, continued to engage in fraud by using guaranteed payments by Bene Market, LLC from misappropriated assets, which totaled $11,797,865. [Compl. ¶ 32]. Judge Rowley found that Bene

4

Received County of Berks Prothonotary's Office on 11/02/2022 10:38 AM Prothonotary Docket No. 22-11757

Market, LLC was "an identical business" as NBOA and a "mere continuation of NBOA for the purposes of ownership interest and rights as between Redmond and Jordan." [Id. ¶ 33].

The Complaint incorporated by reference Judge Rowley's Decision and Verdict, in Exhibit A to this Brief. Judge Rowley also found, "While Redmond did not disclose the general ledger for Bene Market, LLC, the tax returns contain indicia that Redmond continues running his personal spending through Bene Market, LLC and characterizing the same as business assets." [Ex. ¶ 79].

"Factors which may justify disregarding the corporate form include undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetrate a fraud." Kaites v. Commonwealth, Dep't of Environmental Resources, 529 A.2d 1148, 1151 (Pa. Commw. Ct. 1987), followed, Lumax Indus. v. Aultman, 669 A.2d 893, 895 (Pa. 1995). "Not every disregard of corporate formalities or failure to maintain corporate records justifies piercing the corporate veil." Zubik v. Zubik, 384 F.2d 267, 274 (3d Cir. 1967). "[W]henever one in control of a corporation uses that control or corporate assets to further one's own personal interests," such conduct "pierces the corporate veil by intermingling his personal interests with the corporation's interests." College Watercolor Group, Inc. v. William H. Newbauer, Inc., 360 A.2d 200, 207 (1976).

The Complaint alleges that Plaintiff already proved these matters in a separate trial against Redmond, which makes makes the instant Complaint one of the strongest imaginable in civil litigation. The Complaint sufficiently alleges that Bene Market, LLC is dominated by Redmond, intermingled with his personal interests, and used to perpetrate fraud against Plaintiff. Defendants do not raise any argument about reverse-piercing, and have waived the issue. It is axiomatic that a claim is waived "for failure to develop in any meaningful fashion capable of review." Samuel-Bassett v. Kia Motors America, Inc., 34 A.3d 1, 32 (Pa. 2011) (citing Commonwealth v. Walter,

5

Received County of Berks Prothonotary's Office on 11/02/2022 10:38 AM Prothonotary Docket No. 22-11757

966 A.2d 560, 566 (Pa. 2009) and <u>Purple Orchid, Inc. v. State Police</u>, 813 A.2d 801, 804 (Pa. 2002)). "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work." <u>New York Rehab. Care Mgmt. v. NLRB</u>, 506 F.3d 1070, 1076 (D.C. Cir. 2007) (quotation omitted). Suffice it to say, the Complaint alleges that Stephanie Miller is a figurehead equity owner at 4%, calculated to disguise the reality of Redmond's complete control at 96%, and that Bene Market, LLC is purposefully overleveraged to disguise its profits and that no distributions are made to its LLC members. The Complaint therefore pleads an appropriate claim of reverse-piercing by running up from the debtor corporation (NBOA) to the common owner (Redmond) and then down to the targeted sister corporation (Bene Market, LLC). <u>Mortimer v. McCool</u>, 255 A.3d 261, 285 (Pa. 2021).

No relief is due.

### III. Receivers May be Appointed to Prevent Fraud or Dissipation of Assets.

Defendants make a conclusory assertion that the Complaint does not allege sufficient grounds for the appointment of a temporary receiver. This is frivolous. Under Pennsylvania law, "The existence of waste or dissipation of assets, or fraud or mismanagement of partnership assets, give cause for the appointment of a receiver, but we have never indicated that these are the only circumstances that would warrant the appointment of a receiver in partnership liquidation cases." <u>Hankin v. Hankin</u>, 493 A.2d 675, 677 (Pa. 1985). Here, the Complaint alleges that Bene Market, LLC, itself, is a continuation of Alan Redmond's fraud against Plaintiff and that Redmond is running his personal expenses through the LLC and has purposefully overleveraged it, using guaranteed payments for himself (in lieu of LLC member distributions) to disguise all profits and shield any recovery from Plaintiff. Fraud, in and of itself, is a ground for the appointment of a receiver. No relief is due.

Received County of Berks Prothonotary's Office on 11/02/2022 10:38 AM Prothonotary Docket No. 22-11757

**IV.      The Complaint Factually Describes the Grounds for Stephanie Miller's Liability.**

Defendant Stephanie Miller asserts factual insufficiency under Civil Rule 1028(a)(3) and make a conclusory assertion that the Complaint does not assert "any facts" regarding her conduct. This argument is a patently frivolous tactic called myopia, where a party reads Count I and Count II and pretends as if the Narrative doesn't exist. As a matter of law, "it is not enough to focus upon one portion of the complaint.  Rather, in determining whether a particular paragraph in a complaint has been stated with the necessary specificity, *such paragraph must be read in context with all other allegations in that complaint*. Only then can the court determine whether the defendant has been put upon adequate notice of the claim against which he must defend." Yacoub v. Lehigh Valley Med. Assocs., 805 A.2d 579, 589 (Pa.Super. 2002) (emphasis added).

The Narrative sufficiently describes Stephanie Miller's conduct for the same reasons why a cause of action for unjust enrichment is stated in Part I, supra. No relief is due.

## CONCLUSION

WHEREFORE, based on the foregoing, Plaintiff respectfully requests that this Honorable Court overrule the preliminary objections and order Defendants to answer the Complaint.

Respectfully submitted,

**CORNERSTONE LAW FIRM, LLC**

Dated: November 2, 2022           By:      /s/ Joel A. Ready
Joel A. Ready, Esquire
I.D. # 321966
8500 Allentown Pike, Suite 3
Blandon, PA 19510
(610) 926-7875
*Counsel for Plaintiff*

7

# Exhibit A

Received County of Berks Prothonotary's Office on 11/02/2022 10:38 AM Prothonotary Docket No. 22-11757

Exhibit A

**Docket # 14-17117**

**Plaintiff Attorney(s): =E= Norman Valz  2157562424 61338**

**Plaintiff Attorney(s): =E= William Rush  6104135337 209596**

**Defendant Attorney(s): =E=David Crossett  6109267875 313031**

Received County of Berks Prothonotary's Office on 11/02/2022 10:38 AM Prothonotary Docket No. 22-11757

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

Received County of Berks Prothonotary's Office on 11/02/2022 10:38 AM Prothonotary Docket No. 22-11757

NATIONAL BROKERS OF AMERICA, : IN THE COURT OF COMMON PLEAS
INC., and : OF BERKS COUNTY, PENNSYLVANIA
ALAN CHRISTOPHER REDMOND, : CIVIL DIVISION
     Plaintiffs :
 vs. : NO.: 14-17117
         :
JASON SCOTT JORDAN, :
     Defendant : Assigned to: Timothy J. Rowley, J.

## DECISION AND VERDICT

Introduction

1. As will be clear, the Court accepted nearly all of Defendant Jason Scott Jordan's Corrected Proposed Findings of Facts. Before doing so, the Court reviewed the listed Findings of Facts and where appropriate, double checked the citations to the trial transcript for accuracy and reviewed my copious notes taken during the trial.

2. The Court, throughout much of the Facts Established referred to Defendant Jason Scott Jordan as "Jordan" and Plaintiff Alan Christopher Redman as "Redmond".

3. References to Exhibits identified as Plaintiff's Exhibits were so marked as the trial consisted solely of the claims of Jordan as a Counter Claim Plaintiff.

Facts Established

4. National Brokers of America, Inc. ("NBOA") became incorporated in February of 2013, and Redmond operated NBOA as an insurance sales call center.

5. Because NBOA was not profitable at that time, and because Jordan had approximately 13 years' experience in sales, closing deals, and setting up and managing insurance call centers, Redmond induced Jordan to leave his family in Florida and moved

1

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

Received County of Berks Prothonotary's Office on 11/02/2022 10:38 AM Prothonotary Docket No. 22-11757

to Pennsylvania to set up and run the NBOA call center in July 2013.

6.    By written employment agreement dated July 31, 2013 (the "Employment Agreement") which was marked as Plaintiff's Exhibit 1, Jordan was hired as an employee of NBOA.

7.    Plaintiff's Exhibit 1 was drafted by NBOA's attorney and requires that modifications be in writing.

8.    At the time Jordan was hired as an employee of NBOA in July 2013, Redmond was the sole owner of NBOA and NBOA was on the brink of financially failing.

9.    Between July 31, 2013 and October 31, 2013, NBOA paid Jordan $23,778.00 less than the sum that was due under the Employment Agreement and such sum is itemized accurately within Plaintiff's Exhibit 17.

10.    When NBOA was unable to pay Jordan what he was owed under the Employment Agreement, Redmond offered 50% of the NBOA stock to Jordan as non-voting stock and Jordan declined such offer as it left Redmond as a voting shareholder and Jordan would have been non-voting.

11.    As of November 1, 2013, Redmond and Jordan became 50/50 shareholders of NBOA each having exactly 1 voting stock and those two stocks being all of the stock that were issued. Plaintiffs Exhibit 2-B, 3, 4, and 5 memorialize this and the signatures on these documents are those of Redmond and Jordan respectively.

12.    Redmond confirmed Jordan's 50% ownership of NBOA in directing the accountant to list Redmond and Jordan as 50/50 owners of NBOA stock in the 2013 tax returns.

13.    At no time after November 1, 2013 did Jordan resign his employment or

2

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

Received County of Berks Prothonotary's Office on 11/02/2022 10:38 AM Prothonotary Docket No. 22-11757

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

management or ownership of NBOA.

14. As of November 25, 2013, Jordan and Redmond were the only Directors and Shareholders of NBOA. See Plaintiff's Ex 3.

15. Plaintiff's Exhibit 6 is the governing Amended and Restated Bylaws of NBOA.

16. The Shareholder's Agreement dated November 1, 2013 (the "Shareholder's Agreement") found at Plaintiff's Exhibit 2-B has not been amended or superseded and was in effect at all times relevant to the dispute in this case.

17. The Amended and Restated Bylaws of NBOA at (the "Bylaws") found at Plaintiff's Exhibit 6 has not been amended or superseded and was in effect at all times relevant to the dispute in this case.

18. Section 2.07 of the Bylaws required a majority of the votes to take action and thus consent of both Redmond and Jordan was required to take action under the Bylaws.

19. Although Section 3.04 of the Bylaws required notice of any special meeting of the Directors, Redmond never gave Jordan notice of a special meeting of the Directors to discuss Redmond's plan to freeze Jordan out of NBOA.

20. JORDAN WAS NEVER REMOVED AS A FIFTY PERCENT SHAREHOLDER AND AS A DIRECTOR OF NBOA.

21. From November 2013 until August 4, 2014, Redmond and Jordan took equal pay, took equal distributions, acted at all times as having equal authority in the management of NBOA. They were the only shareholders, and were the only directors.

22. From November 2013 until August 4, 2014 Redmond and Jordan were the

Received County of Berks Prothonotary's Office on 11/02/2022 10:38 AM Prothonotary Docket No. 22-11757

only two officers and they intended to each have equal authority despite having different titles as officers. See Plaintiff's Exhibit 31.

23. From November 2013 until August 4, 2014 Redmond and Jordan agreed that Redmond would have primarily responsibility for the corporate finances and Jordan would have primary responsibility for the operations of NBOA.

24. Although NBOA was in a very poor financial condition prior to November 2013, from such time until August 4, 2014, NBOA became very profitable.

25. NBOA's gross sales in 2013 were approximately $365,000 and in 2014 they increased to over four million.

26. This new profitability of NBOA in 2014 was due to Jordan's contributions.

27. From January 2014 until August 4, 2014, NBOA went from doing one health insurance sale per day to 1,000 per month.

28. On August 4, 2014, Redmond changed the locks on the NBOA place of business without giving Jordan a key and posed an armed guard at the NBOA place of business so that Jordan could not enter (the "Freeze Out"). Further, on such date and continuing through the present, Redmond has (1) prevented Jordan from participating in the operations and management of NBOA, (2) refused to provide Jordan with any financial or management information of NBOA excepting litigation discovery, (3) kept earnings, profits, and distributions solely for himself without sharing any with Jordan, (4) publicly claimed to be a 100% owner of NBOA, and (5) treated Jordan in all respects as a total stranger to NBOA and not a Director or Shareholder of NBOA.

29. In short, on August 4, 2014, Redmond froze Jordan out of NBOA (the "Freeze Out") and such Freeze Out continues through the present.

4

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

Received County of Berks Prothonotary's Office on 11/02/2022 10:38 AM Prothonotary Docket No. 22-11757

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

30.     Prior to the Freeze Out both Jordan and Redmond had access to NBOA's bank accounts.

31.     Prior to the Freeze Out Jordan and Redmond took equal dividends from NBOA.

32.     Prior to the Freeze Out Redmond stated to NBOA employees that Jordan "is the best at what he does." Plaintiff's Exhibit 30.

33.     The reason that Redmond wrongfully Froze Out Jordan was because Redmond decided NBOA was finally making money and Redmond didn't need Jordan any longer as the call center was set up and running. Plaintiff' Exhibit 41 at p.3

34.     Prior to the Freeze Out, Redmond had offered investors one percent on nonvoting stock of NBOA for the sum of $250,000.

35.     After the Freeze Out, Redmond sold Ron Pack (Plan Z, LLC) 4% of NBOA's stock for $250,000. Plaintiff's Exhibit 34

36.     Following Redmond's Freeze Out of Jordan in 2014, he took $250,000 from Plan Z, LLC in 2015 in exchange for 4% of NBOA's stock and then Redmond did to Plan Z, LLC essentially the same thing he did to Jordan—i.e., he suddenly claimed that Plan Z, LLC was not a stockholder, he used C. Malcolm Smith to file tax returns that Redmond and Smith knew were incorrect, and he kept all of the investment for himself without ever buying out or repaying Plan Z, LLC.

37.     C. Malcolm Smith was not a credible witness. He provided no credible testimony in support of Redmond. In many cases his own written correspondence contradicted his testimony.

38.     Redmond failed to give Jordan notice of any shareholders meetings

Received County of Berks Prothonotary's Office on 11/02/2022 10:38 AM Prothonotary Docket No. 22-11757

following the Freeze Out and the same was in violation of the Bylaws.

39.    Since the Freeze Out Redmond had continuously prevented Jordan from any involvement as a Director of NBOA and had failed to share NBOA's financial information with Jordan.

40.    Since the Freeze Out Redmond has completely failed to keep or produce any corporate documents for NBOA.

41.    Redmond's timing of the Freeze Out was just as the open enrollment period for the health insurance marketplaces selling newly mandated health insurance by the government under the Affordable Care Act were starting and Redmond and Jordan both knew that this would be a financial benefit to NBOA due to huge numbers of people that would be in the market to purchase health insurance.

**42.    * Regarding the Shareholders' Agreement (Plaintiff's Exhibit 2 B): At trial Redmond failed to present any evidence that immediately leading up to or after the Freeze Out there was any:**

  **a. consent of Jordan for transfer of Jordan's 1 voting stock under Section 1.2;**

  **b. actual authority to terminate Jordan's employment or management of NBOA under Section 1.3;**

  **c. event requiring mandatory repurchase of Jordan's Stock under 1.3 or 1.4;**

  **d. event of a sale triggering valuation under Section 2.1; or**

*Paragraphs 42, 43 and 44 are in bold print to highlight the Court's finding that these proven facts are the key to this decision.*

6

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

e. event terminating the Shareholders' Agreement under Section 2.6

before the 2019 Bankruptcy of NBOA filed by Redmond.

43.    Jordan never surrendered to the NBOA his certificate for NBOA stock under Section 2.6 of the Shareholders' Agreement.

44.    Regarding the Amended Bylaws: At trial Redmond failed to present any evidence that immediately leading up to or after the Freeze Out there was any:

a.  quorum of the shareholders required under Section 2.03 or 3.08 for any NBOA business;

b.  written notice of a meeting required under Section 2.04 or 2.05;

c.  removal of Jordan as a Director under Section 3.02;

d.  regular or special meeting of the Board under Section 3.06, or 2.07;

e.  consent to informal action by Jordan under Section 3.09;

f.  removal of Jordan as a Director under Section 3.14;

g.  resignation of Jordan as an officer under Section 4.02;

h.  election of a successor to Jordan as an officer under Section 4.05

i.  keeping of proceedings of the shareholders and of the Directors as required by Section 7.01;

j.  transfer of Jordan's shares made on the books of NBOA as would have been required under Section 8.02 if any transfer took place;

k.  proper authority under Section 8.03 for Redmond's payment to himself of dividend or distribution;

l.  written notice given to Jordan as required under Section 9.03;

m. consent by Jordan of informal action by Shareholders under Section

Received County of Berks Prothonotary's Office on 11/02/2022 10:38 AM Prothonotary Docket No. 22-11757

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

Received County of Berks Prothonotary's Office on 11/02/2022 10:38 AM Prothonotary Docket No. 22-11757

**9.06.**

45.    At all times following the August 4, 2014 Freeze Out, Redmond violated Section 8.05 of the Amended Bylaws in paying dividends of NBOA to himself only and not to Jordan.

46.    At all times following the August 4, 2014 Freeze Out, Redmond violated Section 9.08 of the Amended Bylaws in not furnishing to Jordan annual financial statements of NBOA.

47.    Jordan gave notice of his dissent of Redmond's Freeze Out actions by filing a Counterclaim against Redmond on December 11, 2014 (see Paragraph 109).

48.    The Shareholders Agreement and Amended Bylaws do not vary the applicable law which affords redress in this situation — i.e., Redmond acting *ultra vires* to freeze Jordan out of NBOA and keep all benefits of NBOA solely for himself.

49.    The NBOA tax returns from 2013-2017 (Plaintiff's Exhibits 9-13) were prepared by accountant, C. Malcolm Smith, with information provided by Redmond.

50.    Redmond knowingly and intentionally lied to C. Malcolm Smith to induce the materially false statement on the 2014-2017 NBOA returns that Redmond was the owner of 100% of the NBOA shares.

51.    Following the Freeze Out, Redmond paid for his personal (and extravagant) expenses (including a strip club, Babies-R-Us, jewelers, and $118,907.27 at Neiman Marcus) directly from the NBOA financial account and the same are recorded on the NBOA General Ledger (Plaintiff's Exhibits 12-16) and accurately summarized on Plaintiff's Exhibit 18 in the amount of $604,126.45 ("Redmond's Personal Expenses") and are in addition to funds taken by Redmond as reported on the NBOA tax returns.

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

Received County of Berks Prothonotary's Office on 11/02/2022 10:38 AM Prothonotary Docket No. 22-11757

52.     Redmond provided no documents at trial to support a finding that Redmond's Personal Expenses were claimed by Redmond as income on his personal tax returns and thus this Court finds that the $604,126.45 taken from NBOA for Redmond's Personal Expenses was taken by Redmond in addition to all other funds taken by Redmond as documented on Redmond's personal tax returns.

53.     Much of the testimony by Redmond's accountant, C. Malcolm Smith, was not found to be credible as it was serving only to Redmond's interest and not supported by documents that, if they existed, would certainly have been in the possession of C. Malcolm Smith, and or Redmond's counsel and would have been presented by Redmond at trial.

54.     Testimony by Redmond's accountant, C. Malcolm Smith, that Redmond's Personal Expenses were somehow subsumed within Redmond's claimed capital gains income was not credible when year after year from 2014 through 2017 he permitted Redmond to continue to run all of Redmond's personal expenses through the NBOA books without changing or stopping this clearly improper conduct and with no documentation from C. Malcolm Smith to support such assertion.

55.     Following the Freeze Out, Redmond took $116,738.60 in cash from NBOA. Plaintiff's Exhibit 20.

56.     Redmond provided no evidence to suggest that the $116,738.60 in cash taken by Redmond from NBOA accounts from the time of the Freeze Out through 2/2/2018 was anything other than cash misappropriated by Redmond from NBOA that was not reported on any tax return and thus it is found that such funds were knowingly, wrongfully taken by Redmond from NBOA in addition to funds reported on tax returns.

9

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

Received County of Berks Prothonotary's Office on 11/02/2022 10:38 AM Prothonotary Docket No. 22-11757

57.    Following the Freeze Out, Redmond wired the sum of $56,000 paid by wire to Redmond's mother, Maria Redmond.

58.    Redmond provided no evidence to suggest that the $56,000 paid to Redmond's mother from the time of the Freeze Out through 7/24/2017 was for any legitimate business purpose for value received, and thus it is found that such funds are deemed as knowingly misappropriated by Redmond from NBOA and are in addition to funds reported on tax returns.

59.    Redmond provided no evidence of any legitimate business purpose for value received justifying the $361,782.72 paid by Redmond from NBOA's funds to another of Redmond's companies in which he is a 96% owner, Bene Market, LLC  and thus it is found that such funds are knowingly misappropriated by Redmond from NBOA and are in addition to funds reported on tax returns.

60.    Following the Freeze Out, in 2017 and 2018 Redmond misappropriated NBOA's book of residual business to his new company, Bene Market, LLC at a discounted rate and without the consent of Jordan and such transfer produced the shutting down of NBOA in 2018.

61.    As a result of Redmond's misappropriation of NBOA's valuable book of business to Bene Market, LLC in 2017, the latter's gross receipts went from $764,545 in 2016 to $17,295,549 in 2017. See Plaintiff's Exhibits 43 and 44.

62.    Public advertisements of NBOA and Bene Markets, LLC as a single business entity were done by or at the direction of or with Redmond's knowledge. See Plaintiff's Exhibits 24, 25, and 26.

63.    From August 11, 2014 through February 6, 2018, Redmond, without

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

Received County of Berks Prothonotary's Office on 11/02/2022 10:38 AM Prothonotary Docket No. 22-11757

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

Jordan's authorization, spent $270,945.05 from NBOA funds on lawyers in the instant action. See Plaintiff's Exhibit 27.

64.    Despite the Court expressly informing Redmond's counsel that evidence should be provided to confirm that no portions of these legal fees were related to the instant action and despite having every opportunity to do so at trial where documents, if any, would certainly be in Redmond's possession, Redmond failed to present any evidence showing what portion of the $270,945.05 was unrelated to the instant matter. .

65.    Redmond had no authority to spend $270,945.05 on legal fees and he personally derived a benefit from the use of the same in his defense in this case and thus the sum of $270,945.05 is properly considered to be misappropriated from NBOA by Redmond and is in addition to aforementioned funds misappropriated by Redmond as reported on the tax returns.

66.    Exhibit 28 is an accurate accounting of money misappropriated from NBOA by Redmond since the August 4, 2014 Freeze Out of Jordan, showing the amount of $3,065,899.33 (which sum does not include either the $270,945.05 in unauthorized attorneys' fees or the sum of $361,782.72 misappropriated by Redmond to Bene Market, LLC). Thus, the total known sum that Redmond misappropriated from NBOA following the Freeze Out is $3,698,627.10.

67.    Redmond's personal assets included four companies in Ireland as of 2015 (Plaintiff's Exhibit 41).

68.    Because of Redmond's refusal to comply with the Court's Orders to appear at a deposition, at which time he would have been deposed regarding his personal assets as relevant to the issue of punitive damages, by Order dated August 31, 2021, Redmond

Received County of Berks Prothonotary's Office on 11/02/2022 10:38 AM Prothonotary Docket No. 22-11757

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

was precluded from testifying at trial.

69.    Aside from the filing of tax returns (which contained material misstatements of fact regarding ownership) Redmond failed to observe any corporate formalities of NBOA following the Freeze Out.

70.    Redmond misappropriated the services of employees and assets (including NBOA's clients) of NBOA and transferred the same to an identical business, Bene Market, LLC. The latter was engaged in selling the same products, using the same office space and same furniture and equipment for Redmond's own personal benefit and to the detriment of Jordan without Jordan's consent. Based on the foregoing, Bene Market, LLC is found to be a mere continuation of NBOA for purposes of ownership interest and rights as between Redmond and Jordan. Plaintiff's Exhibit 42 at 54-63.

71.    Redmond caused NBOA to file for Chapter 7 Bankruptcy in May 2019. (Plaintiff's Exhibit 42 at 10:23).

72.    Redmond failed to provide any explanation for the $764,164 "Administrative Fee" claimed on the Bene Market, LLC 2016 tax return and thus pursuant to the accompanying K-1 for Redmond, $733,963 is properly attributed as income misappropriated by Redmond from an NBOA asset without Jordan's consent in addition to the sum shown on the NBOA tax returns.  See Plaintiff's Exhibit 43.

73.    Redmond took $2,842,276 from Bene Market, LLC in 2017 as "Guaranteed payments" and thus this sum is properly attributed as income misappropriated by Redmond from an NBOA asset without Jordan's consent in addition to the sum shown on the NBOA tax returns.  See Plaintiff's Exhibit 45.

74.    Redmond took $1,294,182 from Bene Market, LLC in 2018 as "Guaranteed

Received County of Berks Prothonotary's Office on 11/02/2022 10:38 AM Prothonotary Docket No. 22-11757

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

payments" and thus this sum is properly attributed as income misappropriated by Redmond from an NBOA asset without Jordan's consent in addition to the sum shown on the NBOA tax returns.  See Plaintiff's Exhibit 46.

75.    Redmond took $3,125,623 from Bene Market, LLC in 2019 as "Guaranteed payments" and thus this sum is properly attributed as income misappropriated by Redmond from an NBOA asset without Jordan's consent in addition to the sum shown on the NBOA tax returns.  See Plaintiff's Exhibit 47.

76.    Redmond took $3,801,821 from Bene Market, LLC in 2020 as W-2 wages and thus this sum is properly attributed as income misappropriated by Redmond from an NBOA asset without Jordan's consent in addition to the sum shown on the NBOA tax returns.  See Plaintiff's Exhibit 48.

77.    In summary, in addition to the $3,698,627.10 that he took directly from NOBA Redmond also took from Bene Market, LLC at least the following sums:

   a.  2016: $733,963

   b.  2017: $2,842,276

   c.  2018: $1,294,182

   d.  2019: $3,125,623

   e.  2020: $3,801,821

   Total taken by Redmond from Bene Market, LLC through 2020: **$11,797,865**

78.    Thus, the sum of money that Redmond misappropriated from NBOA and Bene Market, LLC, and did not share with Jordan, equals **$15,496,492**.

79.    While Redmond did not disclose the general ledger for Bene Market, LLC, the tax returns contain indicia that Redmond continues running his personal spending

Received County of Berks Prothonotary's Office on 11/02/2022 10:38 AM Prothonotary Docket No. 22-11757

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

through Bene Market, LLC and characterizing the same as business expenses. See Plaintiff's Exhibits 43-48 showing $80,969 for 2017 travel, $71,392 for 2018 travel, and $34,386 for 2019 travel with no testimony that insurance sales require any travel.

80.    Despite the fact that Redmond verified in the Pleadings that Jordan did all sorts of bad acts that he claimed in the Pleadings may have justified Redmond's Freeze Out of Jordan, Redmond failed to provide any witness or any evidence at trial to testify to any of the alleged bad Acts.   Thus, the net effect was that Redmond relied on his unproven pleadings and by serially filing bankruptcy on the eve of trial to create the seven year pendency of this litigation so that he could hold Jordan at arm's length while he drained NBOA's coffers and then moved all assets over to Bene, Market, LLC.

81.    As a result of Redmond's conduct, Jordan has suffered personally and professionally (including being forced to relocate out of state) and the expense over more than seven years in seeking to protect his interests in this matter.

The Court enters the following Verdict:

**Received County of Berks Prothonotary's Office on 11/02/2022 10:38 AM Prothonotary Docket No. 22-11757**

| | | |
|---|---|---|
| NATIONAL BROKERS OF AMERICA, INC., and | : | IN THE COURT OF COMMON PLEAS |
| | : | BERKS COUNTY, PENNSYLVANIA |
| ALAN CHRISTOPHER REDMOND, | : | CIVIL ACTION - LAW |
| Plaintiffs, | : | No. 14-17117 |
| | : | |
| v. | : | |
| | : | |
| JASON SCOTT JORDAN, | : | |
| Defendant | : | Assigned to Judge Timothy J. Rowley |

## VERDICT SLIP

The Court finds in favor of Defendant, Jason Scott Jordan and against Plaintiff, Alan Christopher Redmond.

(1)     Compensatory damages including pre-judgment interest in the amount of $8,105,197.20.

(2)     Punitive/exemplary damages in the amount of $5,000,000.00.

(3)     Total damage award $13,105,197.20

BY THE COURT:

TIMOTHY J. ROWLEY, J.

15

**Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117**

**Received County of Berks Prothonotary's Office on 11/02/2022 10:38 AM Prothonotary Docket No. 22-11757**

**CORNERSTONE LAW FIRM, LLC**
Joel A. Ready, Esquire
Attorney I.D. #321966
8500 Allentown Pike, Suite 3
Blandon, PA 19510
(610) 926-7875
*Counsel for Plaintiff*

| | |
|---|---|
| JASON SCOTT JORDAN,<br><br>Plaintiff,<br><br>v.<br><br><br>BENE MARKET, LLC, et al.,<br>Defendants. | COURT OF COMMON PLEAS OF BERKS COUNTY, PENNSYLVANIA<br><br>CIVIL-ACTION<br><br>Docket No.: 22-11757<br><br>JURY TRIAL DEMANDED |

## CERTIFICATE OF SERVICE

I, Maria K. Kreiser, certify that on Wednesday, November 02, 2022, I served true and correct copies of the within Plaintiff's Answer to Defendants' Preliminary Objections, Plaintiff's Brief in Opposition to Preliminary Objections, Exhibits and this Certificate of Service via email to the addressees as listed below:

Norman M. Valz, Esq.
Norman M. Valz & Associates, P.C.
441 Irvington Road
Drexel Hill, PA 19026
*nvalz@msn.com*

Eric E. Reed, Esq.
Fox Rothschild, LLP
2000 Market St., 20th Floor
Philadelphia, PA 19103
*ereed@foxrothschild.com*

**CORNERSTONE LAW FIRM, LLC**

Date:   November 2, 2022          By: _____
                                    Maria K. Kreiser, Paralegal