Received County of Berks Prothonotary's Office on 02/09/2023 5:43 PM Prothonotary Docket No. 22-11757

**CORNERSTONE LAW FIRM, LLC**
Joel A. Ready, Esquire
Attorney I.D. #321966
8500 Allentown Pike, Suite 3
Blandon, PA 19510
(610) 926-7875
*Counsel for Plaintiff*

| | |
|---|---|
| JASON SCOTT JORDAN,<br><br>Plaintiff,<br><br>v.<br><br><br>BENE MARKET, LLC, et al.,<br>Defendants. | COURT OF COMMON PLEAS OF BERKS COUNTY, PENNSYLVANIA<br><br>CIVIL-ACTION<br><br>Docket No.: 22-11757<br><br>JURY TRIAL DEMANDED |

### PLAINTIFF'S PETITION FOR A TEMPORARY RECEIVER

Plaintiff, Jason Scott Jordan, by and through counsel hereby submits this Petition for the appointment of a Temporary Receiver under Pa.R.C.P. 1533, and avers the following:

### GROUNDS

1. Petitioner is Jason Scott Jordan ("Petitioner") and Respondent is Bene Market, LLC ("Respondent").

2. Respondent, Bene Market, LLC, is a limited liability company that is wholly owned and controlled by Alan Christopher Redmond ("Redmond").

3. In 2014, Redmond filed a complaint ("the prior action") in the Berks County Court of Common Pleas, at docket number 2014-17117.

4. Judgment was entered on Petitioner's counterclaim in the aggregate amount of $13,105,197.20, with a Decision authored by Judge Rowley.  [See Exhibit A, "Decision and Verdict"].

5. The Trial Court's Order in the prior action directed the Prothonotary to enter and index the verdict, making Redmond a judgment debtor to the Petitioner.

1

Received County of Berks Prothonotary's Office on 02/09/2023 5:43 PM Prothonotary Docket No. 22-11757

6. Petitioner has not received any payment from Redmond in satisfaction of the judgment.

7. Petitioner therefore filed the instant Complaint, in the Berks County Court of Common Pleas, in execution of judgment, stating claims against Respondent, Redmond, and Stephanie Miller, for unjust enrichment and piercing the corporate veil. The present action is docketed at 2023-11757. Petitioner incorporates by reference the averments of fact concerning the subject matter of the pending case.

8. In the prior action, the Trial Court found Redmond intentionally and fraudulently "froze" Petitioner out of the corporation that did business as National Brokers of America. It found he fraudulently converted assets and income, to which Petitioner had an ownership interest, from the corporation for his personal use outside the limitation of his powers as a shareholder.

9. Redmond formed Respondent Bene Market, LLC during the pendency of the prior action.

10. Redmond caused most of the assets and employees and operations of National Brokers of America to be transferred into Bene Market for no valuable consideration. He did so in order to fraudulently avoid liability to Petitioner. The Trial Court found Respondent is a mere continuation of National Brokers of America, an "identical business." [Exhibit A ¶ 70].

11. Respondent is in the business of selling insurance policies and receives payment from insurance companies for policies sold.

12. In Judge Rowley's Decision, it was found that Redmond had a history of refusing to cooperate in discovery, including evasive answers concerning his net wealth.

13. Judge Rowley found that Alan Christopher Redmond had misappropriated at least $3,698,627.10 from National Brokers of America and at least $11,797,865.00 from Bene Market, LLC. [Exhibit A ¶¶ 77-78].

14. Judge Rowley found that Redmond did not produce any general ledger for Bene Market,

LLC but "the tax returns contain indicia that Redmond continues running his personal spending through Bene Market, LLC and characterizing the same as business expenses." [Exhibit A ¶ 79].

15. Redmond follows a regular pattern of fraud and self-dealing, by overleveraging Respondent so that it appears to have no profits while paying himself an inflated salary and recharacterizing his personal expenses as business expenses, in order to fraudulently avoid liability to Petitioner.

16. As shown in UCC Filings in Exhibit B, creditors have asserted liens on "All Assets now owned or hereafter acquired and wherever located," and "All commissions, payments, premium, monies, or compensation of any kind earned after October 1, 2018, related in any way to the policies or contract by Bene Market LLC and/or Stephanie Miller."

17. Redmond may convert his salary, and other income from Respondent, to physical assets that could depreciate or degrade by the time of final disposition in this matter and execution of the judgment. Such physical assets would be more difficult, costly, and inefficient to execute against than liquid assets.

18. Redmond may easily conceal the proceeds of his salary, perquisites, and other funds drawn from Respondent. The fact he holds dual citizenship in the United States and the Republic of Ireland may facilitate this.

19. Redmond may lose some or all of Respondent's business assets should that business be allowed to fail.

20. Redmond may encumber Respondent's assets with credit, liens, or other security interests held by third parties, and such may defeat Petitioner's right to enforce the judgment.

21. Redmond through Respondent is misappropriating the opportunity to do business from Petitioner, who rightfully and lawfully ought to receive the assets to operate in business of his own.

Received County of Berks Prothonotary's Office on 02/09/2023 5:43 PM Prothonotary Docket No. 22-11757

22.  Petitioner does not have an adequate remedy under law.

## ARGUMENT

23.  Under Civil Rule 1533, the risk of fraud and dissipation of assets during the pendency of a lawsuit are well-recognized grounds for appointing a temporary receiver. Hankin v. Hankin, 493 A.2d 675, 677 (Pa. 1985). Chief Justice Nix described it this way, "A receiver may be appointed upon a showing that such relief is necessary to ensure that the partnership assets will not be dissipated during the pendency of the proceedings." Levin v. Barish, 481 A.2d 1183, 1190 (Pa. 1984) (Nix, *C.J.*, concurring) (citations omitted).

24.  A temporary receivers is necessary to save property from injury or threatened loss or dissipation.

25.  As we do not request appointment without a hearing, Pa. R. Civ. P 1533 does not require a bond.

26.  The receiver should protect the assets and estate held in Respondent from waste.

## CONCLUSION

**WHEREFORE**, Petitioner requests that this Court, after conducting a hearing, appoint a temporary receiver until further order of court; to direct the Receiver cause Bene Market, LLC to fully, fairly, and truthfully cooperate in all discovery requests in this litigation; to direct the Receiver to investigate and prepare a report of any suspicious transactions of Bene Market LLC which may be personal expenses of Alan Christopher Redmond or intended to defraud Plaintiff as judgment creditor of Alan Christopher Redmond; and that the receiver shall prepare an accounting of assets, liabilities, and profits of Respondent; and such other relief as the Court deems necessary, just, or appropriate

.

4

Received County of Berks Prothonotary's Office on 02/09/2023 5:43 PM Prothonotary Docket No. 22-11757

Respectfully submitted,

**CORNERSTONE LAW FIRM, LLC**

Dated: February 9, 2023          By:      /s/ Joel A. Ready
                                          Joel A. Ready, Esquire
                                          I.D. # 321966
                                          8500 Allentown Pike, Suite 3
                                          Blandon, PA 19510
                                          (610) 926-7875
                                          *Counsel for Plaintiff*

5

**Received County of Berks Prothonotary's Office on 02/09/2023 5:43 PM Prothonotary Docket No. 22-11757**

| | |
|---|---|
| JASON SCOTT JORDAN,<br><br>Plaintiff,<br><br>v.<br><br><br>BENE MARKET, LLC, et al.,<br>Defendants. | COURT OF COMMON PLEAS OF<br>BERKS COUNTY, PENNSYLVANIA<br><br>CIVIL-ACTION<br><br>Docket No.: 22-11757<br><br>JURY TRIAL DEMANDED |

## ORDER

AND NOW, this _____ day of the month of _____, 2023, upon

consideration of Plaintiff's Petition for Appointment of a Temporary Receiver, and any response

thereto, and after affording the parties the opportunity to be heard, such Petition is hereby

GRANTED as follows:

(1)    _____ is appointed Temporary Receiver for Bene Market,
LLC (the "Receiver") during the pendency of this litigation and not for the purpose of liquidation.

(2)    The Receiver is authorized to continue, manage, and operate the business of Bene Market,
LLC, until further order of this court, with full authority to carry on, manage and operate the
business as may be deemed advisable by the Receiver.

(3)    The Receiver is authorized to receive and collect any and all sums of money due or owing
to Bene Market, LLC in any manner whatsoever, whether the same are now due or shall hereafter
become due and payable; and that the Receiver is authorized to do such things and enter into such
agreements in connection with the management, care, and preservation of the properties of Bene
Market, LLC as Receiver may deem advisable, and is authorized to incur such expenses and make
such disbursements as may in the Receiver's judgment be advisable or necessary in connection
with the care, preservation, and maintenance of the said properties.

(4)    Alan Christopher Redmond and any persons acting under his direction are enjoined from
in any way disturbing the actions of the Receiver.

(5)    The Receiver's fees shall be paid by Bene Market, LLC, subject to any subsequent court
order concerning the obligation of one or more of the parties.

(6)    The Receiver is authorized, in the Receiver's discretion, to employ such managers, agents,
employees, servants, accountants, valuation consultants, appraisers and attorneys as may be
advisable or necessary in the management, conduct, control, or custody of the affairs of Bene
Market, LLC, and its assets and business. Bene Market, LLC shall be responsible for payment of

1

all such amounts to such persons and Receiver is authorized to require Bene Market, LLC to make such payments and disbursements to all such persons.

(7)     The Receiver is directed to give notice to Plaintiff and Defendants of actions the Receiver takes on behalf of and in operation of the business entities.

(8)     The Receiver and his employees are entitled to rely on all orders of this Court and all outstanding rules of law and shall not be liable to any person for the Receiver's good faith compliance with any order, rule, law, judgment or decree. In no event will the Receiver be liable to anyone for good faith compliance with the Receiver's duties and responsibilities, nor will the Receiver or the Receiver's employees or advisors be liable to anyone for any actions taken or omitted by them except upon a finding by this Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or reckless disregard of their duties.

(9)     Except for the instant case, the Receiver is authorized to institute, prosecute, and defend, compromise, adjust, intervene in, or become party to, such actions or proceedings in the State and federal courts as may in the Receiver's judgment be necessary or proper for the protection, maintenance, and preservation of the assets of Bene Market, LLC or the carrying out of the terms of this order, and likewise to defend, compromise, or adjust or otherwise dispose of any or all actions or proceedings instituted against the Receiver or against Bene Market, LLC and also to appear in and conduct the defense of any suit or adjust or compromise any actions or proceedings now pending in any court by or against Bene Market, LLC where such prosecution, defense, or other disposition of such actions or proceedings will, in the judgment of the Receiver, be advisable or proper for the protection of the properties of Bene Market, LLC.

(10)    The Receiver will not permit Bene Market, LLC to incur any additional debt without the Receiver's express, written authorization.

**IT IS FURTHER ORDERED** that the Receiver must cause Bene Market, LLC to fully,

fairly, and truthfully cooperate in all discovery requests in this litigation.

**IT IS FURTHER ORDERED** that the Receiver investigate any suspicious transactions

where Bene Market, LLC did not receive a reasonably equivalent value in exchange for the transfer

or obligation, and whether any expenses are actually personal expenses of Alan Christopher

Redmond.

**IT IS FURTHER ORDERED** that the Receiver investigate, and within 90 days prepare

a report for this Court and counsel for the parties, on all indebtedness of Bene Market, LLC,

2

**Received County of Berks Prothonotary's Office on 02/09/2023 5:43 PM Prothonotary Docket No. 22-11757**

including whether any of its creditors are insiders and if the transactions are intended to defraud

Jason Jordan as a judgment creditor of Alan Christopher Redmond.

BY THE COURT:

By: _____

Hon. Jeffrey K. Sprecher, *J.*

3

# Exhibit A

Received County of Berks Prothonotary's Office on 02/09/2023 5:43 PM Prothonotary Docket No. 22-11757

# Exhibit A

Received County of Berks Prothonotary's Office on 02/09/2023 5:43 PM Prothonotary Docket No. 22-11757

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

| | | |
|---|---|---|
| NATIONAL BROKERS OF AMERICA, INC., and ALAN CHRISTOPHER REDMOND, | : : : | IN THE COURT OF COMMON PLEAS OF BERKS COUNTY, PENNSYLVANIA CIVIL DIVISION |
| Plaintiffs | : | |
| vs. | : | NO.: 14-17117 |
| | : | |
| JASON SCOTT JORDAN, | : | |
| Defendant | : | Assigned to: Timothy J. Rowley, J. |

**DECISION AND VERDICT**

Introduction

1. As will be clear, the Court accepted nearly all of Defendant Jason Scott Jordan's Corrected Proposed Findings of Facts. Before doing so, the Court reviewed the listed Findings of Facts and where appropriate, double checked the citations to the trial transcript for accuracy and reviewed my copious notes taken during the trial.

2. The Court, throughout much of the Facts Established referred to Defendant Jason Scott Jordan as "Jordan" and Plaintiff Alan Christopher Redman as "Redmond".

3. References to Exhibits identified as Plaintiff's Exhibits were so marked as the trial consisted solely of the claims of Jordan as a Counter Claim Plaintiff.

Facts Established

4. National Brokers of America, Inc. ("NBOA") became incorporated in February of 2013, and Redmond operated NBOA as an insurance sales call center.

5. Because NBOA was not profitable at that time, and because Jordan had approximately 13 years' experience in sales, closing deals, and setting up and managing insurance call centers, Redmond induced Jordan to leave his family in Florida and moved

Received County of Berks Prothonotary's Office on 02/09/2023 5:43 PM Prothonotary Docket No. 22-11757

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

to Pennsylvania to set up and run the NBOA call center in July 2013.

6. By written employment agreement dated July 31, 2013 (the "Employment Agreement") which was marked as Plaintiff's Exhibit 1, Jordan was hired as an employee of NBOA.

7. Plaintiff's Exhibit 1 was drafted by NBOA's attorney and requires that modifications be in writing.

8. At the time Jordan was hired as an employee of NBOA in July 2013, Redmond was the sole owner of NBOA and NBOA was on the brink of financially failing.

9. Between July 31, 2013 and October 31, 2013, NBOA paid Jordan $23,778.00 less than the sum that was due under the Employment Agreement and such sum is itemized accurately within Plaintiff's Exhibit 17.

10. When NBOA was unable to pay Jordan what he was owed under the Employment Agreement, Redmond offered 50% of the NBOA stock to Jordan as non-voting stock and Jordan declined such offer as it left Redmond as a voting shareholder and Jordan would have been non-voting.

11. As of November 1, 2013, Redmond and Jordan became 50/50 shareholders of NBOA each having exactly 1 voting stock and those two stocks being all of the stock that were issued. Plaintiffs Exhibit 2-B, 3, 4, and 5 memorialize this and the signatures on these documents are those of Redmond and Jordan respectively.

12. Redmond confirmed Jordan's 50% ownership of NBOA in directing the accountant to list Redmond and Jordan as 50/50 owners of NBOA stock in the 2013 tax returns.

13. At no time after November 1, 2013 did Jordan resign his employment or

Received County of Berks Prothonotary's Office on 02/09/2023 5:43 PM Prothonotary Docket No. 22-11757

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

management or ownership of NBOA.

14.     As of November 25, 2013, Jordan and Redmond were the only Directors and Shareholders of NBOA. See Plaintiff's Ex 3.

15.     Plaintiff's Exhibit 6 is the governing Amended and Restated Bylaws of NBOA.

16.     The Shareholder's Agreement dated November 1, 2013 (the "Shareholder's Agreement") found at Plaintiff's Exhibit 2-B has not been amended or superseded and was in effect at all times relevant to the dispute in this case.

17.     The Amended and Restated Bylaws of NBOA at (the "Bylaws") found at Plaintiff's Exhibit 6 has not been amended or superseded and was in effect at all times relevant to the dispute in this case.

18.     Section 2.07 of the Bylaws required a majority of the votes to take action and thus consent of both Redmond and Jordan was required to take action under the Bylaws.

19.     Although Section 3.04 of the Bylaws required notice of any special meeting of the Directors, Redmond never gave Jordan notice of a special meeting of the Directors to discuss Redmond's plan to freeze Jordan out of NBOA.

20.     JORDAN WAS NEVER REMOVED AS A FIFTY PERCENT SHAREHOLDER AND AS A DIRECTOR OF NBOA.

21.     From November 2013 until August 4, 2014, Redmond and Jordan took equal pay, took equal distributions, acted at all times as having equal authority in the management of NBOA. They were the only shareholders, and were the only directors.

22.     From November 2013 until August 4, 2014 Redmond and Jordan were the

only two officers and they intended to each have equal authority despite having different titles as officers. See Plaintiff's Exhibit 31.

23.    From November 2013 until August 4, 2014 Redmond and Jordan agreed that Redmond would have primarily responsibility for the corporate finances and Jordan would have primary responsibility for the operations of NBOA.

24.    Although NBOA was in a very poor financial condition prior to November 2013, from such time until August 4, 2014, NBOA became very profitable.

25.    NBOA's gross sales in 2013 were approximately $365,000 and in 2014 they increased to over four million.

26.    This new profitability of NBOA in 2014 was due to Jordan's contributions.

27.    From January 2014 until August 4, 2014, NBOA went from doing one health insurance sale per day to 1,000 per month.

28.    On August 4, 2014, Redmond changed the locks on the NBOA place of business without giving Jordan a key and posed an armed guard at the NBOA place of business so that Jordan could not enter (the "Freeze Out").  Further, on such date and continuing through the present, Redmond has (1) prevented Jordan from participating in the operations and management of NBOA, (2) refused to provide Jordan with any financial or management information of NBOA excepting litigation discovery, (3) kept earnings, profits, and distributions solely for himself without sharing any with Jordan, (4) publicly claimed to be a 100% owner of NBOA, and (5) treated Jordan in all respects as a total stranger to NBOA and not a Director or Shareholder of NBOA.

29.    In short, on August 4, 2014, Redmond froze Jordan out of NBOA (the "Freeze Out") and such Freeze Out continues through the present.

4

Received County of Berks Prothonotary's Office on 02/09/2023 5:43 PM Prothonotary Docket No. 22-11757

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

Received County of Berks Prothonotary's Office on 02/09/2023 5:43 PM Prothonotary Docket No. 22-11757

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

30.     Prior to the Freeze Out both Jordan and Redmond had access to NBOA's bank accounts.

31.     Prior to the Freeze Out Jordan and Redmond took equal dividends from NBOA.

32.     Prior to the Freeze Out Redmond stated to NBOA employees that Jordan "is the best at what he does." Plaintiff's Exhibit 30.

33.     The reason that Redmond wrongfully Froze Out Jordan was because Redmond decided NBOA was finally making money and Redmond didn't need Jordan any longer as the call center was set up and running. Plaintiff' Exhibit 41 at p.3

34.     Prior to the Freeze Out, Redmond had offered investors one percent on nonvoting stock of NBOA for the sum of $250,000.

35.     After the Freeze Out, Redmond sold Ron Pack (Plan Z, LLC) 4% of NBOA's stock for $250,000. Plaintiff's Exhibit 34

36.     Following Redmond's Freeze Out of Jordan in 2014, he took $250,000 from Plan Z, LLC in 2015 in exchange for 4% of NBOA's stock and then Redmond did to Plan Z, LLC essentially the same thing he did to Jordan—i.e., he suddenly claimed that Plan Z, LLC was not a stockholder, he used C. Malcolm Smith to file tax returns that Redmond and Smith knew were incorrect, and he kept all of the investment for himself without ever buying out or repaying Plan Z, LLC.

37.     C. Malcolm Smith was not a credible witness. He provided no credible testimony in support of Redmond. In many cases his own written correspondence contradicted his testimony.

38.     Redmond failed to give Jordan notice of any shareholders meetings

following the Freeze Out and the same was in violation of the Bylaws.

39.     Since the Freeze Out Redmond had continuously prevented Jordan from any involvement as a Director of NBOA and had failed to share NBOA's financial information with Jordan.

40.     Since the Freeze Out Redmond has completely failed to keep or produce any corporate documents for NBOA.

41.     Redmond's timing of the Freeze Out was just as the open enrollment period for the health insurance marketplaces selling newly mandated health insurance by the government under the Affordable Care Act were starting and Redmond and Jordan both knew that this would be a financial benefit to NBOA due to huge numbers of people that would be in the market to purchase health insurance.

**42.     * Regarding the Shareholders' Agreement (Plaintiff's Exhibit 2 B): At trial Redmond failed to present any evidence that immediately leading up to or after the Freeze Out there was any:**

> **a. consent of Jordan for transfer of Jordan's 1 voting stock under Section 1.2;**
>
> **b. actual authority to terminate Jordan's employment or management of NBOA under Section 1.3;**
>
> **c. event requiring mandatory repurchase of Jordan's Stock under 1.3 or 1.4;**
>
> **d. event of a sale triggering valuation under Section 2.1; or**

*Paragraphs 42, 43 and 44 are in bold print to highlight the Court's finding that these proven facts are the key to this decision.*

6

Received County of Berks Prothonotary's Office on 02/09/2023 5:43 PM Prothonotary Docket No. 22-11757

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

Received County of Berks Prothonotary's Office on 02/09/2023 5:43 PM Prothonotary Docket No. 22-11757

e.  event terminating the Shareholders' Agreement under Section 2.6 before the 2019 Bankruptcy of NBOA filed by Redmond.

43.    Jordan never surrendered to the NBOA his certificate for NBOA stock under Section 2.6 of the Shareholders' Agreement.

44.    Regarding the Amended Bylaws: At trial Redmond failed to present any evidence that immediately leading up to or after the Freeze Out there was any:

a.  quorum of the shareholders required under Section 2.03 or 3.08 for any NBOA business;

b.  written notice of a meeting required under Section 2.04 or 2.05;

c.  removal of Jordan as a Director under Section 3.02;

d.  regular or special meeting of the Board under Section 3.06, or 2.07;

e.  consent to informal action by Jordan under Section 3.09;

f.  removal of Jordan as a Director under Section 3.14;

g.  resignation of Jordan as an officer under Section 4.02;

h.  election of a successor to Jordan as an officer under Section 4.05

i.  keeping of proceedings of the shareholders and of the Directors as required by Section 7.01;

j.  transfer of Jordan's shares made on the books of NBOA as would have been required under Section 8.02 if any transfer took place;

k.  proper authority under Section 8.03 for Redmond's payment to himself of dividend or distribution;

l.  written notice given to Jordan as required under Section 9.03;

m. consent by Jordan of informal action by Shareholders under Section

7

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

Received County of Berks Prothonotary's Office on 02/09/2023 5:43 PM Prothonotary Docket No. 22-11757

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

**9.06.**

45. At all times following the August 4, 2014 Freeze Out, Redmond violated Section 8.05 of the Amended Bylaws in paying dividends of NBOA to himself only and not to Jordan.

46. At all times following the August 4, 2014 Freeze Out, Redmond violated Section 9.08 of the Amended Bylaws in not furnishing to Jordan annual financial statements of NBOA.

47. Jordan gave notice of his dissent of Redmond's Freeze Out actions by filing a Counterclaim against Redmond on December 11, 2014 (see Paragraph 109).

48. The Shareholders Agreement and Amended Bylaws do not vary the applicable law which affords redress in this situation — i.e., Redmond acting *ultra vires* to freeze Jordan out of NBOA and keep all benefits of NBOA solely for himself.

49. The NBOA tax returns from 2013-2017 (Plaintiff's Exhibits 9-13) were prepared by accountant, C. Malcolm Smith, with information provided by Redmond.

50. Redmond knowingly and intentionally lied to C. Malcolm Smith to induce the materially false statement on the 2014-2017 NBOA returns that Redmond was the owner of 100% of the NBOA shares.

51. Following the Freeze Out, Redmond paid for his personal (and extravagant) expenses (including a strip club, Babies-R-Us, jewelers, and $118,907.27 at Neiman Marcus) directly from the NBOA financial account and the same are recorded on the NBOA General Ledger (Plaintiff's Exhibits 12-16) and accurately summarized on Plaintiff's Exhibit 18 in the amount of $604,126.45 ("Redmond's Personal Expenses") and are in addition to funds taken by Redmond as reported on the NBOA tax returns.

Received County of Berks Prothonotary's Office on 02/09/2023 5:43 PM Prothonotary Docket No. 22-11757

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

52. Redmond provided no documents at trial to support a finding that Redmond's Personal Expenses were claimed by Redmond as income on his personal tax returns and thus this Court finds that the $604,126.45 taken from NBOA for Redmond's Personal Expenses was taken by Redmond in addition to all other funds taken by Redmond as documented on Redmond's personal tax returns.

53. Much of the testimony by Redmond's accountant, C. Malcolm Smith, was not found to be credible as it was serving only to Redmond's interest and not supported by documents that, if they existed, would certainly have been in the possession of C. Malcolm Smith, and or Redmond's counsel and would have been presented by Redmond at trial.

54. Testimony by Redmond's accountant, C. Malcolm Smith, that Redmond's Personal Expenses were somehow subsumed within Redmond's claimed capital gains income was not credible when year after year from 2014 through 2017 he permitted Redmond to continue to run all of Redmond's personal expenses through the NBOA books without changing or stopping this clearly improper conduct and with no documentation from C. Malcolm Smith to support such assertion.

55. Following the Freeze Out, Redmond took $116,738.60 in cash from NBOA. Plaintiff's Exhibit 20.

56. Redmond provided no evidence to suggest that the $116,738.60 in cash taken by Redmond from NBOA accounts from the time of the Freeze Out through 2/2/2018 was anything other than cash misappropriated by Redmond from NBOA that was not reported on any tax return and thus it is found that such funds were knowingly, wrongfully taken by Redmond from NBOA in addition to funds reported on tax returns.

Received County of Berks Prothonotary's Office on 02/09/2023 5:43 PM Prothonotary Docket No. 22-11757

57.     Following the Freeze Out, Redmond wired the sum of $56,000 paid by wire to Redmond's mother, Maria Redmond.

58.     Redmond provided no evidence to suggest that the $56,000 paid to Redmond's mother from the time of the Freeze Out through 7/24/2017 was for any legitimate business purpose for value received, and thus it is found that such funds are deemed as knowingly misappropriated by Redmond from NBOA and are in addition to funds reported on tax returns.

59.     Redmond provided no evidence of any legitimate business purpose for value received justifying the $361,782.72 paid by Redmond from NBOA's funds to another of Redmond's companies in which he is a 96% owner, Bene Market, LLC  and thus it is found that such funds are knowingly misappropriated by Redmond from NBOA and are in addition to funds reported on tax returns.

60.     Following the Freeze Out, in 2017 and 2018 Redmond misappropriated NBOA's book of residual business to his new company, Bene Market, LLC at a discounted rate and without the consent of Jordan and such transfer produced the shutting down of NBOA in 2018.

61.     As a result of Redmond's misappropriation of NBOA's valuable book of business to Bene Market, LLC in 2017, the latter's gross receipts went from $764,545 in 2016 to $17,295,549 in 2017. See Plaintiff's Exhibits 43 and 44.

62.     Public advertisements of NBOA and Bene Markets, LLC as a single business entity were done by or at the direction of or with Redmond's knowledge. See Plaintiff's Exhibits 24, 25, and 26.

63.     From August 11, 2014 through February 6, 2018, Redmond, without

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

Jordan's authorization, spent $270,945.05 from NBOA funds on lawyers in the instant action. See Plaintiff's Exhibit 27.

64.     Despite the Court expressly informing Redmond's counsel that evidence should be provided to confirm that no portions of these legal fees were related to the instant action and despite having every opportunity to do so at trial where documents, if any, would certainly be in Redmond's possession, Redmond failed to present any evidence showing what portion of the $270,945.05 was unrelated to the instant matter. .

65.     Redmond had no authority to spend $270,945.05 on legal fees and he personally derived a benefit from the use of the same in his defense in this case and thus the sum of $270,945.05 is properly considered to be misappropriated from NBOA by Redmond and is in addition to aforementioned funds misappropriated by Redmond as reported on the tax returns.

66.     Exhibit 28 is an accurate accounting of money misappropriated from NBOA by Redmond since the August 4, 2014 Freeze Out of Jordan, showing the amount of $3,065,899.33 (which sum does not include either the $270,945.05 in unauthorized attorneys' fees or the sum of $361,782.72 misappropriated by Redmond to Bene Market, LLC). Thus, the total known sum that Redmond misappropriated from NBOA following the Freeze Out is $3,698,627.10.

67.     Redmond's personal assets included four companies in Ireland as of 2015 (Plaintiff's Exhibit 41).

68.     Because of Redmond's refusal to comply with the Court's Orders to appear at a deposition, at which time he would have been deposed regarding his personal assets as relevant to the issue of punitive damages, by Order dated August 31, 2021, Redmond

Received County of Berks Prothonotary's Office on 02/09/2023 5:43 PM Prothonotary Docket No. 22-11757

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

Received County of Berks Prothonotary's Office on 02/09/2023 5:43 PM Prothonotary Docket No. 22-11757

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

was precluded from testifying at trial.

69.    Aside from the filing of tax returns (which contained material misstatements of fact regarding ownership) Redmond failed to observe any corporate formalities of NBOA following the Freeze Out.

70.    Redmond misappropriated the services of employees and assets (including NBOA's clients) of NBOA and transferred the same to an identical business, Bene Market, LLC. The latter was engaged in selling the same products, using the same office space and same furniture and equipment for Redmond's own personal benefit and to the detriment of Jordan without Jordan's consent. Based on the foregoing, Bene Market, LLC is found to be a mere continuation of NBOA for purposes of ownership interest and rights as between Redmond and Jordan. Plaintiff's Exhibit 42 at 54-63.

71.    Redmond caused NBOA to file for Chapter 7 Bankruptcy in May 2019. (Plaintiff's Exhibit 42 at 10:23).

72.    Redmond failed to provide any explanation for the $764,164 "Administrative Fee" claimed on the Bene Market, LLC 2016 tax return and thus pursuant to the accompanying K-1 for Redmond, $733,963 is properly attributed as income misappropriated by Redmond from an NBOA asset without Jordan's consent in addition to the sum shown on the NBOA tax returns.  See Plaintiff's Exhibit 43.

73.    Redmond took $2,842,276 from Bene Market, LLC in 2017 as "Guaranteed payments" and thus this sum is properly attributed as income misappropriated by Redmond from an NBOA asset without Jordan's consent in addition to the sum shown on the NBOA tax returns.  See Plaintiff's Exhibit 45.

74.    Redmond took $1,294,182 from Bene Market, LLC in 2018 as "Guaranteed

payments" and thus this sum is properly attributed as income misappropriated by Redmond from an NBOA asset without Jordan's consent in addition to the sum shown on the NBOA tax returns.  See Plaintiff's Exhibit 46.

75.     Redmond took $3,125,623 from Bene Market, LLC in 2019 as "Guaranteed payments" and thus this sum is properly attributed as income misappropriated by Redmond from an NBOA asset without Jordan's consent in addition to the sum shown on the NBOA tax returns.  See Plaintiff's Exhibit 47.

76.     Redmond took $3,801,821 from Bene Market, LLC in 2020 as W-2 wages and thus this sum is properly attributed as income misappropriated by Redmond from an NBOA asset without Jordan's consent in addition to the sum shown on the NBOA tax returns.  See Plaintiff's Exhibit 48.

77.     In summary, in addition to the $3,698,627.10 that he took directly from NOBA Redmond also took from Bene Market, LLC at least the following sums:

    a.  2016: $733,963

    b.  2017: $2,842,276

    c.  2018: $1,294,182

    d.  2019: $3,125,623

    e.  2020: $3,801,821

Total taken by Redmond from Bene Market, LLC through 2020: **$11,797,865**

78.     Thus, the sum of money that Redmond misappropriated from NBOA and Bene Market, LLC, and did not share with Jordan, equals **$15,496,492**.

79.     While Redmond did not disclose the general ledger for Bene Market, LLC, the tax returns contain indicia that Redmond continues running his personal spending

Received County of Berks Prothonotary's Office on 02/09/2023 5:43 PM Prothonotary Docket No. 22-11757

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

Received County of Berks Prothonotary's Office on 02/09/2023 5:43 PM Prothonotary Docket No. 22-11757

through Bene Market, LLC and characterizing the same as business expenses. See Plaintiff's Exhibits 43-48 showing $80,969 for 2017 travel, $71,392 for 2018 travel, and $34,386 for 2019 travel with no testimony that insurance sales require any travel.

80.     Despite the fact that Redmond verified in the Pleadings that Jordan did all sorts of bad acts that he claimed in the Pleadings may have justified Redmond's Freeze Out of Jordan, Redmond failed to provide any witness or any evidence at trial to testify to any of the alleged bad Acts.   Thus, the net effect was that Redmond relied on his unproven pleadings and by serially filing bankruptcy on the eve of trial to create the seven year pendency of this litigation so that he could hold Jordan at arm's length while he drained NBOA's coffers and then moved all assets over to Bene, Market, LLC.

81.     As a result of Redmond's conduct, Jordan has suffered personally and professionally (including being forced to relocate out of state) and the expense over more than seven years in seeking to protect his interests in this matter.

The Court enters the following Verdict:

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

Received County of Berks Prothonotary's Office on 02/09/2023 5:43 PM Prothonotary Docket No. 22-11757

| | | |
|---|---|---|
| NATIONAL BROKERS OF AMERICA, INC., and | : | IN THE COURT OF COMMON PLEAS BERKS COUNTY, PENNSYLVANIA |
| ALAN CHRISTOPHER REDMOND, | : | CIVIL ACTION - LAW |
| Plaintiffs, | : | No. 14-17117 |
| | : | |
| v. | : | |
| | : | |
| JASON SCOTT JORDAN, | : | |
| Defendant | : | Assigned to Judge Timothy J. Rowley |

## VERDICT SLIP

The Court finds in favor of Defendant, Jason Scott Jordan and against Plaintiff, Alan Christopher Redmond.

(1)     Compensatory damages including pre-judgment interest in the amount of $8,105,197.20.

(2)     Punitive/exemplary damages in the amount of $5,000,000.00.

(3)     Total damage award $13,105,197.20

BY THE COURT:

_____
TIMOTHY J. ROWLEY, J.

15

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

# Exhibit B

**Received County of Berks Prothonotary's Office on 02/09/2023 5:43 PM Prothonotary Docket No. 22-11757**

Exhibit B

Filling# : 2020092401566
Date Filed : 09/24/2020
Pennsylvania Department of State

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER(Optional)**

Corporation Service Company-(800) 858-5294

**B. E-MAIL CONTACT AT FILER(optional)**

filingdept@cscinfo.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Corporation Service Company
COUNTER
Springfield
IL 62703
United States

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide the exact ,full Debtor name.Do not omit,modify or abbreviate any part of Debtor's name.

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| BENE MARKET LLC. | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2005 REGENCY DR. | Reading | PA | 19610 | USA |

OR (before 1b)

2. DEBTOR'S NAME: Provide the exact , full Debtor name. Do not omit , modify, or abbreviate any part of the Debtor's name.

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| SEGURO MEDICO, LLC. | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2005 REGENCY DR. | Reading | PA | 19610 | USA |

OR (before 2b)

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| CORPORATION SERVICE COMPANY, AS REPRESENTATIVE | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| PO Box 2576, UCCSPrep@CSCGlobal.com | Springfield | IL | 62708 | USA |

OR (before 3b)

4. COLLATERAL: This financing statement covers the following collateral:

Receivables- All Assets now owned or hereafter acquired and wherever located, including but not limited to, the following subcategories of assets: a. Accounts, including but not limited to, credit card receivables; b. Chattel Paper; c. Inventory; d. Equipment; e. Instruments, including but not limited to, Promissory Notes; f. Investment Property; g. Documents; h. Deposit Accounts; I Letter of Credit Rights; j. General Intangibles; k. Supporting Obligations; and i. Letter of Credit Rights; j. General Intangibles; k. Supporting Obligations; and i. Proceeds and Products of the foregoing. NOTICE PURSUANT TO AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO FURTHER ENCUMBER THE COLLATERAL DESCRIBED HEREIN. THE FURTHER ENCUMBERING OF WHICH MAY CONSTITUTE THE TORTIOUS INTERFERENCE WITH THE SECURED PARTY'S RIGHT BY SUCH ENCUMBRANCES IN THE EVENT THAT ANY ENTITY IS GRANTED

5. Check only if applicable and check only one box:Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

[199378932]

International Association of Commercial Administrators(IACA)

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/19/12)

Received County of Berks Prothonotary's Office on 02/09/2023 5:43 PM Prothonotary Docket No. 22-11757

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME | | |
|---|---|---|
| OR  9b. INDIVIDUAL'S SURNAME | | |
| FIRST PERSONAL NAME | | |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX | **THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY** |

**ADDITIONAL DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (a or b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| REDMOND | ALAN | CHRISTOPHER | |

| c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2005 REGENCY DR | Reading | PA | 19610 | USA |

**ADDITIONAL DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (a or b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| KROEMMELBEIN | SHANNON | | |

| c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2005 REGENCY DR | Reading | PA | 19610 | USA |

**ADDITIONAL SECURED PARTY'S NAME <u>or</u> ASSIGNOR SECURED PARTY'S NAME:** Provide only <u>one</u> name (a or b)

| a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |

| c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral)**

A SECURITY INTEREST IN DEBTOR'S ACCOUNTS, CHATTEL PAPER OR GENERAL INTANGIBLES CONTRARY TO THE ABOVE, THE SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH ENTITY.

| 13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | 14. This FINANCING STATEMENT: ☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing |
|---|---|
| 15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | 16. Description of real estate: |

**17. MISCELLANEOUS:**

Received County of Berks Prothonotary's Office on 02/09/2023 5:43 PM Prothonotary Docket No. 22-11757

**Filling# : 2020111800158**
**Date Filed : 11/18/2020**
**Pennsylvania Department of State**

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER(Optional)**

Corporation Service Company-(800) 858-5294

**B. E-MAIL CONTACT AT FILER(optional)**

filingdept@cscinfo.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Corporation Service Company
COUNTER
Springfield
IL 62703
United States

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide the exact ,full Debtor name.Do not omit,modify or abbreviate any part of Debtor's name.

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| BeneMarket LLC | | | |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 4 S 4TH ST | READING | PA | 19602 | USA |

2. DEBTOR'S NAME: Provide the exact , full Debtor name. Do not omit , modify, or abbreviate any part of the Debtor's name.

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| U.S. Small Business Administration | | | |

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2 North 20th Street, Suite 320 | Birmingham | AL | 35203 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

All tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto. 897704 8209

5. Check only if applicable and check only one box:Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

[202018496]

International Association of Commercial Administrators(IACA)

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/19/12)

Received County of Berks Prothonotary's Office on 02/09/2023 5:43 PM Prothonotary Docket No. 22-11757

**Filling# : 2019080200250**
**Date Filed : 08/02/2019**
**Pennsylvania Department of State**

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER(Optional)

Insurety Capital LLC-3059216517

B. E-MAIL CONTACT AT FILER(optional)

rmejia@insuretycapital.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Insurety Capital LLC
600 BRICKELL AVE, 19TH FLOOR
MIAMI Florida 33131
United States

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME:  Provide the exact ,full  Debtor name.Do not omit,modify or abbreviate any part of Debtor's  name.

| 1a. ORGANIZATION'S NAME | | | |
| Bene Market LLC | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2525 North 12th Street | Reading | PA | 19605 | United States |

OR (beside 1b)

2. DEBTOR'S NAME:  Provide the exact , full  Debtor name. Do not omit , modify, or abbreviate any part of the Debtor's name.

| 2a. ORGANIZATION'S NAME | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Miller | Stephanie | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2525 North 12th Street | Reading | PA | 19605 | United States |

OR (beside 2b)

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):  Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
| Insurety Capital LLC | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c.  MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 600 BRICKELL AVE, 19TH FLOOR | MIAMI | FL | 33131 | United States |

OR (beside 3b)

4. COLLATERAL:  This financing statement covers the following collateral:

All commissions, payments, premium, monies, or compensation of any kind earned after October 1, 2018, related in any way, to the policies or contract by Bene Market LLC and/ or Stephanie Miller.

5. Check only if applicable and check only one box:Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)  ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction    ☐ Manufactured-Home Transaction    ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien    ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):    ☐ Lessee/Lessor    ☐ Consignee/Consignor    ☒ Seller/Buyer    ☐ Bailee/Bailor    ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

International Association of Commercial Administrators(IACA)

**FILING OFFICE COPY —** UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/19/12)

Received County of Berks Prothonotary's Office on 02/09/2023 5:43 PM Prothonotary Docket No. 22-11757

**Received County of Berks Prothonotary's Office on 02/09/2023 5:43 PM Prothonotary Docket No. 22-11757**

**CORNERSTONE LAW FIRM, LLC**
Joel A. Ready, Esquire
Attorney I.D. #321966
8500 Allentown Pike, Suite 3
Blandon, PA 19510
(610) 926-7875
*Counsel for Plaintiff*

| | |
|---|---|
| JASON SCOTT JORDAN,<br><br>Plaintiff,<br><br>v.<br><br><br>BENE MARKET, LLC, et al.,<br>Defendants. | COURT OF COMMON PLEAS OF BERKS COUNTY, PENNSYLVANIA<br><br>CIVIL-ACTION<br><br>Docket No.: 22-11757<br><br>JURY TRIAL DEMANDED |

<u>**CERTIFICATE OF SERVICE**</u>

I, Maria K. Kreiser, certify that on Thursday, February 09, 2023, I served true and correct copies of the within Plaintiff's Petition for Temporary Receiver, Proposed Order, Exhibits and this Certificate of Service via email to the addressees as listed below:

Norman M. Valz, Esq.
Norman M. Valz & Associates, P.C.
441 Irvington Road
Drexel Hill, PA 19026
*nvalz@msn.com*

Eric E. Reed, Esq.
Fox Rothschild, LLP
2000 Market St., 20th Floor
Philadelphia, PA 19103
*ereed@foxrothschild.com*

**CORNERSTONE LAW FIRM, LLC**

Date:    February 9, 2023             By:    _____
                                          Maria K. Kreiser, Paralegal